No. 13803

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

DANIEL H. LOPEZ,

Petitioner,

-vs-

ROGER CRIST, Warden,
Montana State Prison,

Respondent.

Appeal from:   District Court of the First Judicial District,
Honorable Gordon Bennett, Judge presiding.

Counsel of Record:

For Petitioner:

Peter M. Meloy argued, Helena, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Charles Graveley, County Attorney, Helena, Montana
Nick A. Rotering argued, Helena, Montana

Submitted:   May 4, 1978

Decided: MAY 11 1978

Filed: MAY 11 1978

Thomas J. Kearney
Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

This is an original proceeding wherein petitioner, Daniel H. Lopez, seeks release from custody to parole status through a writ of habeas corpus.

Petitioner plead guilty to a charge of rape in Missoula County and was sentenced to a 20 year term in the state prison in 1970. On September 22, 1975, petitioner was paroled by the Board of Pardons and transferred to the supervision of a parole officer in Helena, Montana. He left Montana shortly thereafter, without the permission of his parole officer, but returned upon being told by his parole officer that he would not be charged with a parole violation for leaving the state. Petitioner then enrolled in a concentrated employment program in Helena.

Petitioner was arrested in Helena on November 7, 1975, on a parole violation, issued because he was a suspect in a sexual assault case in Lewis and Clark County. An on-site hearing on the alleged parole violation was held on November 26, 1975. The hearing examiner found probable cause to hold petitioner pending a full hearing on the alleged parole violation. Petitioner was returned to the state prison.

A hearing before the Board of Pardons set for December 18, 1975, was continued at petitioner's request to enable him to obtain an attorney. The Board set January 29, 1976, as the new hearing date. Petitioner did not appear at this hearing, and the Board deemed his failure to appear a waiver of his right to a hearing and revoked his parole. Petitioner's allegation that a prison guard refused to allow him to attend that hearing was not disputed by respondents.

Trial in Lewis and Clark County on the sexual assault charge resulted in an acquittal on July 8, 1976. Petitioner was returned to custody at the state prison following that trial.

On April 25, 1977, Lopez petitioned this Court for a writ of habeas corpus. We remanded the petition to the District Court, Lewis and Clark County, for hearing and determination. Following a hearing, by order filed August 18, 1977, the District Court directed the Board of Pardons to provide petitioner with a full hearing on his parole revocation. The District Court also ruled that petitioner was not entitled to release from custody to parole status pending that hearing. Petitioner then filed an appeal with this Court challenging the District Court's denial of his petition for release to parole status pending his revocation hearing.

Before that appeal could be heard, the Board of Pardons set a hearing on petitioner's parole revocation pursuant to the District Court's order. On December 29, 1977, after several delays, petitioner appeared before the Board of Pardons for the hearing on the merits of his parole revocation. The Board found there was insufficient evidence to warrant revocation and voted to restore petitioner's parole. However, the Board did not release petitioner to parole. Rather, it ordered him to appear at the next Board meeting, in January 1978, to present an acceptable parole plan.

Petitioner appeared at that meeting and presented two parole plans. Neither was acceptable to the Board. There was some opposition, apparently from law enforcement authorities from Missoula and Lewis and Clark Counties, to petitioner being paroled in Montana, and the Board therefore suggested he submit an out-of-state parole plan.

On April 6, 1978, petitioner filed a second petition for a writ of habeas corpus with this Court, alleging his continued detention is illegal. Petitioner contends he is entitled to immediate release from custody and return to parole status. Respondent Department of Institutions contends the state has the power to keep petitioner in custody until he submits an acceptable new parole plan.

Both sides concede the Board of Pardons and the Department of Institutions have broad discretionary powers regarding parole matters. Parole is a matter of grace, not of right, and whether a convict is behind walls or walking the streets on parole, he remains subject to the sentence imposed and to the regulatory action of the parole authorities. State ex rel. Herman and Roy v. Powell, (1961), 139 Mont. 583, 589, 367 P.2d 553; Petition of LaDoux, (1964), 144 Mont. 9, 11, 393 P.2d 778.

The imposition of parole conditions and the supervision of parolees are mandated by administrative regulation and statutory law. See: MAC 20-3.10(6)-S10060; sections 95-3214 and 95-3306, R.C.M. 1947. Clearly, parole authorities have the duty, in the exercise of their sound discretion, to control and condition parole as best suits the needs of society as well as the parolee.

Parole statutes and case law establish guidelines for the granting and revocation of parole, but none embrace the precise question here—whether a parolee who, after a full revocation hearing, has been bound by the Board of Pardons not to have violated his parole may nevertheless be confined pending submission of an acceptable new parole plan.

In Morrissey v. Brewer, (1972), 408 U.S. 471, 92 S.Ct. 2593, 33 L Ed 2d 484, the Supreme Court of the United States held that due process requires at least an informal hearing prior to the revocation of parole. The Supreme Court recognized the importance of parole status as an underlying consideration supporting due process protections, stating:

> "* * * the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often others. * * *" Morrissey, 33 L Ed 2d 495.

Here, the Board's determination that there was insufficient evidence to revoke petitioner's parole establishes that his "indeter-

-4-

minate liberty" should be restored. Respondents' argument that petitioner must first submit an acceptable parole plan is not wholly without merit. However, under the circumstances, petitioner should not have to carry that burden alone. The parole authorities have, in this case, an affirmative duty to actively aid petitioner in developing a realistic, acceptable plan. It must be recognized that petitioner/ is in prison only because the authorities made an erroneous decision that he had violated the terms of his parole. Surely petitioner, under these circumstances, is entitled to the total cooperation and active efforts of the authorities in finding an acceptable parole plan.

Petitioner is entitled to release from custody to parole status. The authorities are given thirty days from the date of this decision to develop and approve a parole plan for petitioner. If at the end of thirty days such plan has not been approved and the petitioner released, petitioner is ordered released from prison, with the authorities ordered to supervise the out-of-prison activities of petitioner commensurate with his status as a parolee.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

-5-